# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**TRACY GABER,**

        Plaintiff,

    -vs-                                                                         **Case No. 12-C-124**

**MICHAEL J. ASTRUE,**
**Commissioner, Social Security Administration,**

        Defendant.

# DECISION AND ORDER

Tracy Gaber appeals from the denial of her application for Social Security Disability benefits. The Administrative Law Judge found that Gaber's degenerative disk disease was a severe impairment, but Gaber was not disabled because she had the residual functional capacity to perform sedentary work with no crawling and no climbing ladders, ropes, or scaffolding, with occasional stooping, crouching, kneeling, balancing, or climbing of stairs.

On review, the Court will overturn the Commissioner's final decision only if it lacks support by substantial evidence, is grounded in legal error, or is too poorly articulated to permit meaningful review. *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 699 (7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000). The Court views the record as a whole but does not reweigh the evidence or substitute its judgment for that of the ALJ. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). The ALJ

is not required to address every piece of evidence or testimony presented, but must provide a "logical bridge" between the evidence and his conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Gaber's primary care physician, Dr. Edward Carlson, filed a report stating that Gaber's condition would cause her to miss more than three days of work a month due to her back pain and that she could not work more than three days in a row. The ALJ credited Dr. Carlson's opinion on lifting and carrying (limited to about 10 pounds), but rejected the "bulk of his assessment" and gave it "little weight" because it was "based almost entirely upon [Gaber's] subjective complaints." R. 26-27.

An ALJ must give "controlling weight" to a treating source's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." 20 C.F.R. § 404.1527(d)(2). When a treating physician's opinion is rejected, the ALJ must offer good reasons for doing so. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). First, the ALJ explained that while "Dr. Carlson opined that the claimant would be unable to work more than 3 days in a row, there is no medical justification for such a limitation. The undersigned considered the claimant's failure to attend intermittent medical appointments and noted that, rather than because of impairment-related problems, the claimant failed to attend appointments because of scheduling problems, parenting obligations, or familial illnesses." R. 27. Missing intermittent appointments, and the justifications therefor, have no relation to the ability to work on a sustained basis. Moreover, there is nothing in the record to support a finding that

Gaber ever told Dr. Carlson about the missed appointments and that she couldn't work for the same reasons that caused her to miss those appointments.

Next, the ALJ addressed Dr. Carlson's opinion on reaching overhead. "Although Dr. Carlson stated that the claimant had no ability reaching overhead, the claimant demonstrated good overhead reaching abilities when examined by Dr. Kolimas." *Id.* However, Dr. Kolimas merely observed that Gaber was "able to reach overhead to grab brochures. She separates these out and places them back into a single pile." R. 382. Unlike Dr. Kolimas' evaluation, Dr. Carlson's opinion was given in the context of evaluating Gaber's abilities during an 8-hour working day. Moreover, Dr. Carlson's opinion was given more than a year after Dr. Kolimas' observation.

Third, the ALJ wrote that "Dr. Carlson's determination that claimant's pain would interfere with her ability to concentrate and maintain attention is belied by the claimant's own statements concerning her good abilities in these areas." R. 27. However, the reports cited by the ALJ were dated April 7, 2009 and November 5, 2009; Dr. Carlson's opinion is dated October 7, 2010. There is evidence that Gaber's condition deteriorated in the interim, including Dr. Carlson's notes from June 8, 2010 indicating worsening back pain with bilateral leg radiation. At that appointment, Gaber was crying, in constant pain, and could not sleep. Moreover, on January 26, 2010, Dr. Carlson prescribed Celexa for depression.

Fourth, the ALJ noted that the "medical evidence clearly establishes that [Dr. Carlson's] relationship with the claimant is that of an intermittent primary care physician. Since the claimant's alleged onset, Dr. Carlson has only intermittently treated the claimant;

-3-

while he met with the claimant in February of 2007, he did not examine the claimant again until March of 2009. The claimant did not seek treatment from him for back pain until June of 2010. The undersigned finds that Dr. Carlson does not have a longitudinal treatment relationship with the claimant to support this assessment . . ." R. 27. However, the record reveals that the ALJ was mistaken on the number of visits. Dr. Carlson treated Gaber on June 8, 2010 (R. 458-59), January 26, 2010 (R. 460), August 25, 2009 (R. 462), March 10, 2009 (R. 461), March 2, 2006 (R. 472), July 27, 2006 (R. 476), and September 6, 2006 (R. 466).

Finally, the ALJ wrote that while "Dr. Carlson opined that the claimant's prognosis is 'poor,' the undersigned finds that Dr. [Christopher] Sturm's assessment that the claimant was doing well after surgery and could return to work activities much more persuasive." R. 27. However, the opinion cited by the ALJ was from 2007, and Dr. Sturm did not say that Gaber was "doing well" or that she could "return to work activities." Instead, Dr. Sturm stated that Gaber can "continue to advance activity on an incremental basis. She should make adjustments as needed based on any symptoms. . . . Hopefully return to work will go uneventfully." R. 219-20. Moreover, the ALJ ignored a later report from Dr. Kolimas that Gaber's prognosis is "poor as patient has had this condition for a few years with gradual worsening of condition. Her range of motion of the back is poor secondary to pain." R. 384.

For all of the foregoing reasons, the ALJ's rejection of Dr. Carlson's treating physician opinion was not supported by substantial evidence in the record. On remand, the ALJ should also consider whether Gaber's depression is a severe impairment at step 2 of the

sequential process. The ALJ held that there is "no evidence that the claimant suffers from any medically determinable psychological impairment," R. 19, but as noted above, Dr. Carlson prescribed Celexa for depression.

**IT IS HEREBY ORDERED THAT** the Commissioner's denial of benefits is **REVERSED**, and this matter is **REMANDED** for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four).

Dated at Milwaukee, Wisconsin, this 4th day of December, 2012.

                                                     **BY THE COURT:**

                                                 */s/ Rudolph T. Randa*
                                                 **HON. RUDOLPH T. RANDA**
                                                 **U.S. District Judge**